Thank you, Your Honor. Ms. Piolli? Good morning. May it please the Court? You should reverse the Board's decision because the review of the record demonstrates the obviousness, rejection, and absence of substantial evidence. Alternatively, or in addition – and in addition – you should remand because the majority committed legal error when they failed to consider evidence of non-obviousness presented in applicants' declarations and tried to allow applicants to respond to the Board's alternative analysis in the first instance as presented at the Appendix J.A. 7-8 in accordance with this Court's decision in IN RE STEPPIN, IN RE LEAVE, and IN RE LIFE. The examiner in the Board's decision – the rejection in the decision – rests on a fundamental misunderstanding of the teachings of Horrigan and Park. Horrigan is a large-diameter lumen catheter that must have sufficient stiffness for pushability through vessels and sufficient rigidity… The crowded art field here, and we've seen that – we know what Park and Horrigan say. What most distinguishes you from them? From Park and Horrigan? The presence of the coil for flexibility and for kink resistance. But doesn't the Park reference indicate the equivalence of a braid and a coil? Absolutely not. In fact, the Park reference only discloses the use of a coil for this Let me explain a little bit why they do that. In surgery, with a long catheter, particularly ones of small diameter such as Park discloses, the physician gets to the point where he's not able to transmit what he's doing here down there, and he can take the catheter out and form with his fingers the end of it into a preformed shape, which will help him possibly navigate those smaller-diameter vessels as they get increasingly smaller. What Park did was take a shape-memory substance such as nitinol or other shape-memory metal and impart a shape to it, a remembered shape, put it in its catheter to straighten it out, and then when the end needed to be reformed into that shape with the application of a small amount of heat, the softening of the end of the catheter, the polymer at the end of the catheter would soften up, and that reinforcing member would do what it wanted to do, it would want to go back to its remembered shape. And that way the physician would not have to retract the catheter, form that in the end, and start all over again. But the point is you still have coils in the prior art as well as braids. Why isn't it obvious to want a skill in the art to employ the coils in the claimed invention? Are we talking coils generally or the coils disclosed by Park? Because if we're talking coils generally... We're talking coils as understood by one of skill in the art. Why wouldn't one of skill in the art recognize that a coil that is formable or a coil which is disclosed in Park in its figures quite clearly could also be used more generally in the way that you do? Because Horrigan is the primary reference and the examiner's rejection and the board's decision was based on the premise that one of skill would substitute the coil of Park for the braid of Horrigan. One reading Horrigan, one of ordinary skill in the art, and I think the substantial evidence shows this, one of ordinary skill in the art reading Horrigan would not substitute a coil for Horrigan's braid because it would defeat the purpose of Horrigan's catheter for sufficient stiffness, for pushability through the vessel, and sufficient rigidity for a high degree of torsional control. And they would know that a coil would not provide that. So what you're saying is a braid kinks before a coil. Significantly. But see, that's a problem because your claim didn't incorporate any feature about the degree of kink resistance. Both braids and coils resist kink to some degree. Now if you had said in your claim a higher degree of kink resistance indicated by such and such measurement, perhaps you'd have an argument. But there's no argument in your claim about a degree of kink resistance. So you can't argue that that distinguishes you over the prior art. I think that we have to go back to the claim language that has two distinguishing features, flexibility and kink resistance. And in answer to your question... Well, the kink resistance is in the preamble, as we know, but it's not variably claimed. It just says any kink resistance will do. And a coil is a kink resistor, as is a braid a kink resistor. And the prior art shows both coils and braids. Isn't the patent office really within its rights? Well, I first want to go back to when you mentioned that it's only in the preamble. I think that we have to look at the facts of this case, such as the Catalina Marketing versus School Savings. The preamble can be part of the claim language. In particular, if the specification... Good. Let's admit that right up front. But you still don't have any variable kink resistance. You're claiming general kink resistance. Therefore, it applies to coils and braids equally. I don't think we are talking about kink resistance generally. I think we're talking about the word kink resistance, meaning that it will resist kinking in the area of the coil. I think that we need... Better than something else. But you don't claim that. You just claim general kink resistance. And with general kink resistance, your claim thereby encompasses both coils and braids that are in the prior art, doesn't it? No, I disagree. Well, tell me how I've reasoned that wrongly, or how the patent office has reasoned that wrongly, because that's the way I read their reasoning. Well, I think when a skill in the art reading the claim, kink resistance in the area of a tubing has to resist kinking to not close up the lumen. I think a braid may... And the Osborne Declaration states that it may not prevent kinking at all. And if you look at the Talia Murthy Declaration and the photographs in the Osborne Declaration, I would argue that a braid doesn't provide kink resistance, and that perhaps if we read Horrigan very, very closely at column five, JA 600, they talk about the braiding through the transition tubing. And if you look at figure two of Horrigan, there's this tiny little spot in between tubing 10 and 20, and there's this little bit of transition tubing. Are you saying that a braid, a wire, does not provide any structural strengthening? It provides a reinforcement, but I don't believe it provides the kink resistance as claimed. Well, what's the difference between reinforcement and kink resistance? Well, a steel tube could provide... Well, actually not a steel tube, let me give you... As long as it's reinforced, it's going to resist kink to some degree. And we already know, as long as you've got some, you haven't claimed a variable amount. I don't think that that's necessarily true, that all reinforcements provide kink resistance. I haven't done the testing, and obviously I don't have that in front of me. Ms. Pioli, you're focusing on Horrigan, understandably, but looking at Park again, which indicates the equivalence of a braid and a coil, it also says the construction technique of the invention has resistance to kinking, a recovery from kinking. So kinkiness seems to be in Park as well as the equivalence of coils and braids. Well, I think that section has to be read in context, because you said it, Judge Laurie, it's the construction technique, the construction technique preforming this end portion into a preformed shape that is causing this to, as the patent says, exceptional strength, resistance to kinking, and recovery from kinking if it should occur. And the construction technique has the benefit of producing. And the invention in Park is not the use of a coil or a braid. It is the use of a reinforcing member. There's no particular, Park doesn't point out anything in particular about the use of a coil or a braid for kinking. It is their particular construction technique that uses a shape memory element that has this preformed shape. And that's at column two, lines 40, JA586. So I believe when it's read in context, reading the entire disclosure of Park, it would be clear to one of ordinary skill in the art that Park is not teaching that these two items are equivalent for kink resistance. Well, the invention includes a kink resistant sheet, but only among the several components is there a coil. So why is it so clear that the claim is emphasizing the kink resistant aspect of the coil? I'm a little, our claim? Yeah, your claim. Applicant argued and demonstrated during prosecution that the kink resistance and the flexibility, the combination of those two elements was key here. And that the combination of Horrigan and Park didn't give you that combination because of the use of a coil. I'd also like to address the fact that the board did not consider, neither the examiner nor the board considered applicants' declarations. The examiner rejected the Osborne Declaration because it didn't compare the prior art invention with the invention and no further analysis of it. And then she rejected the Collier-Murphy Declaration only because the shorty hardness level of the PBACs was not shown. And to the contrary, I'd like to point out that after she made that objection to the Collier-Murphy Declaration at JA 349, the applicant submitted the shorty level of the PBACs as being 70, which falls directly within the range in the Horrigan reference. And so it was disclosed. She ignored that and never considered that declaration again. The board merely quoted from the Osborne Declaration at JA, parenthetically quoted from the Osborne Declaration stating that braided coils may be interchangeable for some instances. I won't go through the whole quote. And never once addressed the Collier-Murphy Declaration. That is a failure to analyze the gram factors and is remandable on that basis alone. I'm going to save the rest of your rebuttal time. Oh, yes. Thank you. Thank you. Let's hear from Ms. Rashid. May it please the court. This is a garden variety 103 rejection. And all the board did here was simply call balls and strikes. Here, at the time of Parker's invention, a person of ordinary skill in the art would know how to construct an introducer sheet that has a tube, that it has a reinforcement means around that tube, and that also has a first and a second outer tube with different levels of hardness. How do we know this? This is what Horigen teaches. And Horigen teaches that the reinforcement means also provides kink resistance. It is a clear teaching at JA 600, column 5, lines 1 through 5. In Horigen's preferred embodiment, Horigen chooses to use a wire braid. However, Horigen is not limited to a wire braid. In fact, Horigen, on JA 599, column 4, lines 27 to 29, teaches that, quote, those skilled in the art would recognize that other reinforcement means could be used and provides the example of carbon fibers. Contrary to Parker's characterization, Horigen's critical objectives are not stiffness, pushability, rigidity, and torsional control. And that is a misreading of Horigen. Horigen, I mean, that comes, and the only thing that Parker cites for that teaching is column 1, lines 18 to 21. But that's just where Horigen is talking about catheters in general. What Horigen is focused on is creating a catheter with an attached flexible distal tip. So Horigen, like the clamped invention, is concerned about flexibility and kink resistance. A person of skill in the art would also know at the time of this invention that they would have at their disposal off-the-shelf types of reinforcement means, and we know this from Park. Park teaches you that the figures in Park are self-evident, and they show that this invention is painfully obvious. Park shows you that you can have coils, you can have braids, you can have woven braids, and you can have single braids. And all of these are alternative types of reinforcements, and Park actually uses the word alternative types of reinforcements. Contrary to Parker's arguments? In addition to the coil versus braid and kink resistance arguments, we have outer tubes and second outer tubes. What part do they play in the analysis of this claimed invention? It's possible that they are also involved in providing some level of reinforcement, and it might be a combination of all of those. Well, they seem to claim that. They say it's a relatively hard durometer, which is a reinforcing measure. It does say that, but the references are pretty clear that it is the reinforcement means, the wire braid or the coil, which provides the kink resistance, which provides that property to the introducer sheet here. With regards to the declaration. You're talking about the declaration of non-obviousness? That's correct, Your Honor. It would be helpful to me to understand why the board treated it so casually. Well, I think the reason that the board did fully consider the declaration, Your Honor, is that what the board found is that we don't dispute that there are different properties for each type of reinforcement. Some might be better for kink resistance, some might be better for torsional control. But the claim here doesn't require that. The claim just requires kink resistance. And here it is clear that both a braid and a coil provide some baseline level of kink resistance. And the advantages and disadvantages of one reinforcement over the other is not relevant to this claim. And the declaration, Parker's counsel just said that she reads the Osborne Declaration and the Collier-Murthy Declaration as proving that braids provide zero kink resistance. Now that's completely inconsistent with the references, which show that a braid and a coil provide kink resistance, and it is inconsistent with her own declaration, which shows that braids also have some level of kink resistance based on the data that they provide in there. In Collier-Murthy, they say that a braid has kink resistance to 21 degrees, I believe, and that a braid and a coil has kink resistance to 67 degrees. The point is there is some baseline level of kink resistance both in a coil and in a braid. And that is why the Board did not find the declarations to be persuasive with regards to this claim. There was a dissent in the Board. The dissent seems to be making an argument very similar to Ms. Pioli's, that you read the equivalent commentary in the prior art, it's really relevant only to the specific forming aspect of that prior art, not general kink resistance. Judge O'Neill does state that in his dissent, but I do believe that it is a very narrow understanding of the Park reference. Park teaches at column 14 that there are many different types of reinforcements, lists the many different types of reinforcements, provides figures to depict those reinforcements, and goes on to say that these structures are nevertheless alternative types of... I'm not sure I get the words right. Where in column 14 does he make that? Column 14, lines 8 to 12. Nevertheless, alternatives, I see that. Right. I believe Judge O'Neill just read the Park reference too narrowly here. And with regards to the disclosure of kink resistance, what it discloses here at column 2, lines 36 to 46, is that the construction technique involves a combination of the tubes and the reinforcement means, and it is that construction technique that has the benefit of producing exceptional kink resistance. That's how I read Park. It goes on to say that the catheter can be changed in shape from an equilibrium state to a non-equilibrium state, but in either state, there's still kink resistance being provided by the reinforcement means. I see column 5 of Horrigan mentions the wire braid offers better kink resistance. It does say that, Your Honor. It says that the wire braid offers better kink resistance. What it is comparing it to is without any reinforcement means, not necessarily a comparison to a coil. We acknowledge that. But it does tell you that a braid does provide some level of kink resistance, and that's all that's required for this claim. Finally, I'd just like to say that in the reply brief, the appellant makes a point about the deplete spine case, and I think that case is readily distinguishable from the facts of this case. In that case, the prior art reference clearly showed that, warned that the claim device would fail within the given body, rendering the device inoperable. We have nothing here in either reference that says that the combination would destroy the reference. There's no teaching of that here. If you have any further questions, Your Honor, happy to answer. Thank you, Ms. Rasheed. Thank you. Ms. Pioli, you have two and a half minutes. I just have a couple of points. The first one is that the PTO admits that Horrigan doesn't disclose a coil to the extent that Horrigan discloses carbon fibers, but not a coil. Applicant claimed a coil. Kink resistance, as used in the claim, and one of the only art would understand it to be a relative term, but would also understand that a coil provides significant kink resistance as opposed to another reinforcement, such as a braid. And Horrigan itself provides a clear teaching away from using a coil in its specification, where it states that the catheter requires sufficient stiffness for pushability and sufficient rigidity for a high degree of torsion control. One of skill in the art would read that as reading away from or going down the path of substituting the braid with a coil. The Horrigan file history clearly states that a coil and a braid aren't equivalent. And for ten years, the examiner has said they were, and Horrigan itself shows they weren't. I'd also like to point out in column nine of the PARC reference that there's nothing that says this is distinguishable from the cases where the device would fail. If you read PARC at lines 10 through 20, PARC actually talks about using a braid as helping with torque control at the end of their device, and say that even that doesn't provide a successful device, and so they have to use this construction technique, and that the difference between using a braid and a construction technique can mean the difference between a successful procedure and one that is not successful. Here, PARC is saying even a braid may not have a successful procedure. One of skill reading this also would understand a coil would be even less, and it would fail during an in vivo procedure. I have no more comments. Thank you, Ms. Fiore. That concludes our meeting. Thank you. All rise.